IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

| | |
|---|---|
| Steven Stimeling, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 07-1330 |
| | ) |
| Board of Education Peoria Public | ) |
| Schools District 150, | ) |
| Kenneth Hinton, Thomas Broderick, | ) |
| Charles Davis, and Ron Scales, | ) |
| | ) |
| Defendants. | ) |

## REPORT AND RECOMMENDATION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

This case is before the Court for a Report and Recommendation on Defendants' motion to dismiss Plaintiff's complaint for failure to state a claim. For the reasons below, the Court recommends that Plaintiff's retaliation claim based on the equal protection clause of the Fourteenth Amendment be dismissed. The Court otherwise recommends that the motion to dismiss be denied.

### Standard

To state a claim under federal notice pleading standards, all the Complaint must do is set forth a "short and plain statement of the claim

showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Factual allegations are accepted as true and need only give "'fair notice of what the . . . claim is and the grounds upon which it rests.'" EEOC v. Concentra Health Serv., Inc., 496 F.3d 773, 776-77 (7th Cir. 2007), *quoting* Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964 (2007)(other citation omitted). However, a plaintiff's "' . . . allegations, [must] show that it is plausible, rather than merely speculative, that he is entitled to relief.'" Tamayo v. Blagojevich, 526 F.3d 1074, 1083 (7th Cir. 2008)(quoted and other citations omitted).

## Allegations

Plaintiff is a white male, employed by the school district as a police officer. "Beginning in 2005 and continuing to present, [he] has been discriminated against on account of his race and in retaliation for his complaints and opposition to discrimination and retaliation. For example, [he] was repeatedly harassed, singled out for criticism, surveilled, threatened with discipline, suspended and ultimately terminated in August 2006." (Complaint para. 12). Defendants treated similarly situated black employees more favorably. (Complaint para. 14). In 2007, Plaintiff was

reinstated to his position, but "he suffered and continues to suffer damage . . . ." (Complaint para. 17).

Plaintiff filed this case in December 2007, pursuing three counts: race discrimination and retaliation claims under Title VII (Count I); race discrimination and retaliation claims under the Fourteenth Amendment (Count II)(through 42 U.S.C. Section 1983 and under 42 U.S.C. Section 1981); and, a procedural due process claim under the Fourteenth Amendment (Count III)(through 42 U.S.C. Section 1983).

## Analysis

### I. Title VII Retaliation

Defendants argue that Plaintiff fails to state a claim for retaliation under Title VII, in light of the Supreme Court's explanation of notice pleading in <u>Bell Atlantic Corp. v. Twombly</u>, 127 S.Ct. 1955 (2007). Defendants assert that "federal courts now require some specificity when asserting retaliation claims under any legal theory, . . . ." (d/e 7, p.3).[1]  In

---

[1] Defendants title their argument in Section B "The Plaintiff Fails to Meet the Rearticulated Standard for Pleading Title VII Retaliation," but later in that section discuss Counts II and Count III, which are not based on Title VII (d/e 7, p. 5).  The Court addresses only the Title VII retaliation claim in Section I of this Recommendation, as Counts II and III are addressed in other sections.

support they cite E.E.O.C. v. Concentra Health Serv., Inc., 496 F.3d 773 (7th Cir. 2007).

In Concentra, the plaintiff alleged in his original complaint that he was retaliated against for reporting that his supervisor had been giving preferential treatment to an employee with whom the supervisor was having an affair. The district court dismissed the complaint without prejudice because "favoring a subordinate because of a sexual relationship did not, without more, violate Title VII." 496 F.3d at 775-76. In an attempt remedy the defect, the EEOC filed an amended complaint that deleted references to the reason for the retaliation, alleging only that the retaliation was because of the plaintiff's opposition to "conduct in the workplace that he objectively and reasonably believed in good faith violated Title VII . . . ." Id. at 776.

Unlike Concentra, Plaintiff does "provide some specific description of . . . [the protected] conduct beyond the mere fact that it is protected." Concentra, 496 F.3d 781, citing Kyle v. Morton High Sch., 144 F.3d 448, 454 (7th Cir. 1998). Plaintiff's protected conduct was his opposition to racial discrimination against him in the terms and conditions of his employment. Concentra itself affirms that Title VII discrimination on the basis of race

may be alleged "quite generally," by stating, for example, "'I was turned down for a job because of my race.'" 496 F.3d at 781, *quoting* Bennett v. Schmidt, 153 F.3d 516, 518 (7th Cir. 1998); *see also* Tamayo v. Blagojevich, 526 F.3d 1074, 1084 (7th Cir. 2008)(affirming that "a complaint alleging sex discrimination need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of her sex." and remarking that *Concentra* "reaffirmed the minimal pleading standard for simple claims of race or sex discrimination").

Similarly, general allegations about retaliation for complaints about race discrimination also suffice at the notice pleading stage. For example, in the Seventh Circuit's recent case, Tamayo, the plaintiff alleged a Title VII sex discrimination against her employer and also alleged that, "'[s]ince Plaintiff began to complain about her lack of equal pay and filing her charge of discrimination with the EEOC, Plaintiff has been subjected to adverse employment actions by Defendants in retaliation for her complaints.'" 526 F.3d at 1085. She listed "a number of specific employment actions" and "did not attempt to obfuscate the facts to avoid dismissal." Id.

Here, Plaintiff alleges that he suffered retaliation for his complaints regarding the race discrimination against him. That retaliation included harassment, criticism, discipline, surveillance, suspension and termination. (Complaint paras. 12, 14). These adverse actions were allegedly motivated by both race and retaliation. Defendants point out that Plaintiff "never discloses the content or recipient of his complaint" or "a single concrete act or communication by any of the Individual Defendants", but that kind of detail is not required for notice pleading. (d/e 7, pp. 4-5). "'Instead of lavishing attention on the complaint until the plaintiff gets it just right, a district court should keep the case moving.'" Concentra, 496 F.3d at 780, *quoting* Bennett v. Schmidt, 153 F.3d 516, 518 (7th Cir. 1998).

In sum, the Court believes the Complaint provides enough information for Defendants to "begin to investigate and defend against [Plaintiff's Title VII retaliation] claim." Tamayo, 526 F.3d at 1085.

## II. Fourteenth Amendment Retaliation

The Court agrees with Defendants that Plaintiff states no claim for retaliation based on the equal protection clause of the Fourteenth Amendment. "[T]he right to be free from retaliation may be vindicated under the First Amendment or Title VII, but not the equal protection

clause." Boyd v. Illinois State Police, 384 F.3d 888, 898 (7th Cir. 2004)(collecting cases). Plaintiff does not allege that Defendants retaliated against him because of his race. He alleges Defendants retaliated against him "because of his complaints and opposition to discrimination . . . ." (Complaint para. 20; Plaintiff's Response, d/e 9, p. 5).

Plaintiff argues that his equal protection retaliation claim falls under a "class-of-one" theory. He contends that "retaliation motivated by complaints of race discrimination" is, by its nature, the kind of irrational and malicious behavior covered by a class-of-one claim. There is support for that argument in the Seventh Circuit. See Crowley v. McKinney, 400 F.3d 965, 972-73 (7th Cir. 2005)(reversing dismissal of class-of-one equal protection claim based on personal animosity arising from the plaintiff's criticisms of school, some of which also formed basis of First Amendment claim); Jackson v. City of Chicago, 521 F.Supp.2d 745 (N.D. Ill.)(2007)(class of one equal protection claim and First Amendment claim, both based on allegations that the plaintiff was singled out from other employees who did not file lawsuits, survived motion to dismiss); Byers v. Illinois State Police, 2000 WL 1741723 (N.D. Ill. 2000)(not reported in F.Supp.2d).

However, those cases predate a recent Supreme Court case, Engquist v. Oregon Dept. of Agr.--- S.Ct. ----, 2008 WL 2329768 *2 (June 9, 2008), holding that "a 'class-of-one' theory of equal protection has no place in the public employment context." In Engquist, an employee of the Oregon Department of Agriculture, alleged that she was discriminated against on the basis of her race, sex and national origin. She also pursued, in addition to the discrimination claims, a "'class-of-one' equal protection claim, alleging that she was fired for 'arbitrary, vindictive, and malicious reasons.'" Id. * 2. The Supreme Court held that a "class of one" equal protection claim not based on one's membership in a particular class is not available for public employees. The Supreme Court reached this conclusion based on the government's managerial discretion as an employer and the government's interest as an employer in efficient and effective management of its workplace. To allow the claim, the Supreme Court reasoned, would transform every wrongful employment decision into an equal protection claim to be defended in court. Id. * 11.

In light of Engquist, the Court sees no possibility that Plaintiff can state a class-of-one retaliation claim based on the equal protection clause. Accordingly, the Court will recommend the retaliation claim in Count II be

dismissed to the extent it is based on the equal protection clause of the Fourteenth Amendment. Plaintiff's retaliation claim under Title VII is unaffected by Engquist, as is Plaintiff's retaliation claim under 42 U.S.C. Section 1981. Plaintiff's equal protection claim based on discrimination because of his race also remains.

### III.  42 U.S.C. Section 1981

Defendants argue that Plaintiff cannot pursue a claim under 42 U.S.C. Section 1981 because he is a white male, a member of the majority race. However, Section 1981 prohibits discrimination based on race, and "everyone has a race." Hague v. Thompson Distribution Co., 436 F.3d 816, 820 (7th Cir. 2006). Accordingly, Plaintiff is protected from discrimination based on his race under Section 1981, though the applicable legal standard for him is somewhat different. *See* id. (setting forth elements of reverse discrimination claim under 42 U.S.C. Section 1981). Additionally, for the reasons discussed above, Plaintiff adequately alleges a retaliation claim under Section 1981. *See also* CBOCS West, Inc. v. Humphries, 128 S.Ct. 1951 (2008)(42 U.S.C. Section 1981 claims encompass retaliation claims).

## IV. Official Liability and Individual Liability

Defendants argue that Plaintiff fails to sufficiently allege liability against the school district because Plaintiff has not "allege[d] facts to show that [the school district's] policymakers knew of the alleged unlawful or discriminatory behavior of its officers . . .," or that "the complained of activity was so widespread and persistent that the school board should have known . . . ."  (d/e 7, p. 7).[2]

The school district cannot be liable for constitutional violations by its employees unless those violations were caused by a school district policy. Bennett v. Roberts, 295 F.3d 687, 699 (7th Cir. 2002)("A court may not hold a government entity, such as a board of education, liable under § 1983 unless the entity adopted a policy or custom that resulted in the deprivation of the plaintiff's constitutional rights."); Juniel v. Park Forest-Chicago Heights School Dist. 163, 176 F.Supp.2d 842, 848-49 (N.D.Ill. 2001)(no respondeat superior liability for school board under 42 U.S.C. Section 1981 or 1983).  An unconstitutional policy may be evidenced by express

---

[2]Suing Defendants in their official capacities is equivalent to suing the government entity they represent.  Walker v. Sheahan, 526 F.3d 973, 977 (7th Cir. 2008).  Plaintiff alleges that Defendants Hinton, Broderick, Davis and Scales work for the Board of Education Peoria Public School District 150 ("school district"), which is also a defendant.  (Complaint paras. 5-9).  Defendants do not dispute that the school district is the correct legal entity.

statements, by a widespread practice "so permanent and well-settled as to constitute a custom or usage within the force of law," or by the actions of a person with "final policy-making authority." Billings v. Madison Metropolitan School Dist., 259 F.3d 807, 817 (7th Cir. 2001), *citing* McCormick v. City of Chicago, 230 F.3d 319, 324 (7th Cir. 2000).

Plaintiff alleges that "Defendants have a policy and practice of treating black employees more favorably than similarly situated white employees with respect to their terms and conditions of employment." (Complaint para. 15). Plaintiff alleges that he was disciplined, harassed and terminated, both as a result of that policy and/or as a result of the Defendants' actions individually. *(See* Complaint paras. 21-22). In the Court's opinion, these allegations provide sufficient notice of Plaintiff's claim against the school district. Requiring more specificity at this point would be contrary to the notice pleading standard and would also be unfair to Plaintiff, who has not had an opportunity to seek evidence in discovery.

Defendants also argue that Plaintiff fails to state constitutional claims against them in their individual capacities because the "plaintiff fails to allege any facts or conclusions that show they qualify as policymakers for the School Board." (d/e 7, p.7). The "policymaker" inquiry is relevant to

official liability, not to individual liability. A government actor can be individually liable if he was "'personally responsible for the deprivation of a constitutional right.'" Sanville v. McCaughtry, 266 F.3d 724, 740 (7th Cir. 2001), *citing* Chavez v. Illinois State Police, 251 F.3d 612, 652 (7th Cir. 2001). Personal responsibility means participating directly in the constitutional violation or directing the unconstitutional conduct. A defendant may also be personally responsible if the "'conduct . . . occurred with his knowledge or consent.'" Sanville, 266 F.3d at 740, *quoting* Chavez. Thus, Defendants can be liable in their individual capacities whether or not they are policymakers. Plaintiff alleges that Defendants intentionally discriminated against him based on his race, retaliated against him for complaining about the discrimination, and acquiesced to discrimination and retaliation by others. At this stage, that is sufficient to infer individual liability against Defendants. A developed factual record may show otherwise.

**V. Procedural Due Process**

The Court has not considered the collective bargaining agreement or the arbitration opinion that Defendants attach to their memorandum. (d/e 7, Exs. A and B). Documents attached to a motion to dismiss may be

considered "if they are referred to in the plaintiff's complaint and are central to the claim." Continental Casualty Co., 417 F.3d 727, 731 n. 2 (7th Cir. 2005). The Complaint makes no reference to the documents nor are they central to the claims as framed by Plaintiff.[3] [4] Plaintiff objects to their consideration and asks that the documents be stricken or that he be given "leave to engage in discovery regarding the grievance process before making any determination." (d/e 9, p.13). The Court agrees with Plaintiff that it would be unfair to consider the documents at this stage without giving him a chance for discovery. Accordingly, the Court's analysis does not rely on the exhibits.

Defendants note in one sentence, without elaboration, that Plaintiff fails to identify the source of his alleged constitutionally protected interest in his job. (d/e 7, p. 5). This remark is curious since Defendants want the Court to consider the collective bargaining agreement. In any event, Defendants fail to offer any developed argument to dispute Plaintiff's

---

[3]Nor does the Court believe the motion should be treated as one for summary judgment, given the factual inquiry typically required of procedural due process claims. Sonnleitner v. York, 304 F.3d 704, 713 (7th Cir. 2002)( . . . "minimum procedural due process requirements ultimately turn on a highly fact-specific inquiry.").

[4]Defendants do not argue that the Court can take judicial notice of the arbitrator's opinion, but even if judicial notice was taken, what pre-termination process Plaintiff received cannot be determined conclusively.

allegation that he "was a public employee with a property interest in his employment and was entitled to receive a fair due process hearing prior to his termination." (Complaint para. 25). Accordingly, the Court assumes for purposes of this Recommendation only that Plaintiff did have a constitutionally-protected interest in his job.

Plaintiff alleges that he was terminated "without receiving a fair due process pre-termination hearing. Shortly thereafter, Plaintiff was given a sham hearing and was then terminated a second time." (Complaint para. 26).[5] He says that he is not challenging the "post-termination process" he received, presumably the arbitration hearing and award which the Court is not supposed to consider. (d/e 9, p. 12-13)("Defendants' position concerning Plaintiff's alleged post termination due process claim is baffling. Plaintiff does not make a post-termination due process claim.").[6] Plaintiff

---

[5]The terms "pre" and "post" are confusing here because the first hearing happened after the termination, and thus the first hearing was not literally "pre-termination." The Court uses the word "pre-termination" for the first hearing because Defendants allegedly treated it as such. The second hearing was the "post-termination" hearing in the usual meaning of the word.

[6]Plaintiff is not challenging the arbitrator's award, which he could not do in this action. Ewing v. City of Monmouth, 2007 WL 2680823 *3 (C.D. Ill. 2007, Judge Mihm)(not reported in F.Supp.2d)(dismissing claim that "essentially attempt[ed] to appeal the third-party Arbitrator's decision under the guise of a due process claim.").

argues that the "post-termination arbitration did not legally cure the pre-termination sham process." (d/e 9, p. 12).

> . . . the scope of the right to a pretermination hearing is dependent upon the adequacy of posttermination remedies, an independent right to a pretermination proceeding does exist in this context. . . . However, when adequate posttermination proceedings exist, a pretermination hearing need only provide "an initial check against mistaken decisions-essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action."

Michalowicz v. Village of Bedford Park, --- F.3d ----, 2008 WL 2357104 *5 (7th Cir. 2008), *quoting* Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985) and *citing and quoting* Schacht v. Wis. Dep't of Corr., 175 F.3d 497, 503 (7th Cir. 1999) (if "'there is the opportunity for full administrative review once a termination decision has been reached, the pre-termination hearing can be somewhat truncated'"). "In its truncated form, 'pretermination process need only include oral or written notice of the charges, an explanation of the employer's evidence, and an opportunity for the employee to tell his side of the story.'" Id., *quoting* Gilbert v. Homar, 520 U.S. 924, 929 (1997).

Defendants argue that Plaintiff had no constitutional right to a "fair due process pre-termination hearing" because Plaintiff received full post-

deprivation process through the grievance procedure and arbitrator's hearing. As discussed above, the Court does not believe it is proper to consider the documents attached to the motion. In any event, ". . . due process requires pre-termination notice and an opportunity to respond even where a CBA provides for post-termination procedures that fully compensate wrongfully terminated employees." Chaney v. Suburban Bus Division of the Regional Transportation Authority, 52 F.3d 623, 629 (7th Cir. 1995). Plaintiff says that he "was terminated before a pre-termination hearing was conducted, and that thereafter the process afforded him was a sham." (d/e 9, p. 12). The Court cannot tell from the pleadings what pre-termination opportunity Plaintiff had to tell his side of the story, other than the alleged "sham" first hearing provided *after* the termination. See Ryan v. Illinois Dep't of Children and Family Serv., 185 F.3d 751, 762 (7th Cir. 1999)(fact dispute existed regarding whether pre-termination hearing was "sham" because officials had already decided to fire employees). Accordingly, the Court believes it would be premature to dismiss this claim.

## VI. More Definite Statement

Defendants move, in the alternative to dismissal, for a more definite statement of Plaintiffs' claims. Fed. R. Civ. P. 12(e) provides that "[a] party

may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." This section is intended to apply " . . . only in cases where the movant cannot reasonably be required to frame an answer or other responsive pleading to the pleading in question." *1946 Amendment Advisory Committee Note to Fed.R.Civ.P. 12(e).* Its purpose is not to heighten the notice pleading standard or to substitute as a discovery device. Defendants assert the allegations are too vague, but they do not contend that they are so vague that they are unable to craft an Answer or responsive pleading. Nor does the Court view the allegations as too vague to do so. Accordingly, the Court will recommend the alternative request for a more definite statement be denied.

## VII. Qualified Immunity

Defendants assert qualified immunity on the procedural due process claim (Count III). (d/e 7, pp. 9-10). Plaintiff is not required to plead facts to defeat qualified immunity:

> . . . a complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds. . .[citation omitted]. Because an immunity defense usually depends on the facts of the case, dismissal at the pleading stage is inappropriate . . . "Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground for dismissal .... and when defendants do assert

immunity it is essential to consider facts in addition to those in the complaint."

Alvarado v. Litscher, 267 F.3d 648, 651 (7th Cir. 2001), *quoting* Jacobs v. City of Chicago, 215 F.3d 758, 775 (7th Cir.2000).

Defendants assert that "the plaintiff lacks any basis in law to show the existence of a clearly established constitutional right to the process depicted in Count III . . . ." (d/e 7, p. 10). Yet the constitutional right to some sort of pre-termination process is well established (assuming a constitutionally-protected interest in the job). Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985). As discussed above, exactly what pre-termination process Plaintiff received is not established. Accordingly, the Court will recommend that a conclusive decision on qualified immunity await a further developed factual record. *See* Fairley v. Fermaint, 482 F.3d 897, 901-02 (7th Cir. 2007)(rule that interlocutory appeal clock starts to run when the district court conclusively denies a motion on qualified immunity "relieves public officials from any pressure to take what may be premature appeals from orders declining to dismiss complaints.").

WHEREFORE, the Court RECOMMENDS that Defendants' Motion to Dismiss or for a More Definite Statement be granted in part and denied in part (d/e 6). The Court RECOMMENDS dismissal of the Plaintiff's

retaliation claim to the extent it is based on the equal protection clause of the Fourteenth Amendment rather than on Title VII or 42 U.S.C. Section 1981. The Court otherwise recommends the motion be denied.

Any objections to this Report and Recommendation must be filed in writing with the Clerk of the Court within ten working days after service of a copy of this Report and Recommendation. See 28 U.S.C. § 636(b)(1). Failure to timely object will constitute a waiver of objections on appeal. Video Views, Inc. v. Studio 21, Ltd., 797 F.2d 538, 539 (7th Cir. 1986). See also Local Rule 72.2.

ENTER:    June 23, 2008

*s/ Byron G. Cudmore*
_____
BYRON G. CUDMORE
UNITED STATES MAGISTRATE JUDGE