# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS, PEORIA DIVISION

| | |
|---|---|
| Steven Stimeling, | ) |
| Plaintiff, | ) |
| v. | ) No. 07-CV-1330 |
| Board of Education Peoria Public Schools District 150, Kenneth Hinton, Thomas Broderick, Charles Davis, and Ron Scales, | ) |
| Defendants. | ) |

## OPINION

BYRON G. CUDMORE, U.S. MAGISTRATE JUDGE:

Plaintiff pursues claims under Title VII, 42 U.S.C. § 1981, and the Equal Protection Clause, based on alleged reverse discrimination and retaliation against him for complaining about that discrimination. Plaintiff has moved to compel the disclosure of all complaints of race discrimination or retaliation made by School District employees, district-wide. Defendants object to producing complaints by employees outside of the Campus Security Department, where Plaintiff works. They also object to producing complaints regarding discrimination against minorities, as opposed to

reverse discrimination complaints.  For the reasons below, Plaintiff's motion will be granted in part and denied in part.

## Background and Discovery Requests at Issue

Plaintiff filed this case in December 2007.  After the Complaint survived a motion to dismiss, scheduling deadlines were set on September 24, 2008, with discovery closing February 1, 2010.  On or about August 27, 2009, Defendants responded to Plaintiff's First Continuing Set of Interrogatories and First Request for Production of Documents, objecting to some of those requests.  (d/e 30, Ex. 1, 2).  The requests at issue are:

> ***Interrogatory 11 to School District***: Identify any formal or informal, verbal or written, complaints (internal and/or to third parties), grievances, EEOC charges, IDHR charges and/or lawsuits against the School District, its employees and/or agents, regarding race discrimination, racial harassment, a hostile work environment based on race, and/or legally prohibited retaliation from January 1, 2003, through the present.  For each, identify the name of the complainant and person(s) accused of wrongdoing; the date and substance of the complaint; and, the resolution, outcome and/or result of the complaint.
>
> ***Document Request 20:*** All documents related to official or unofficial, formal or informal reports and/or complaints made by anyone regarding race discrimination, racial harassment, hostile work environment on the basis of race, any genre of retaliation, and/or Due Process by any employee, agent, and/or official of the Peoria Public Schools District 150 from January 1, 2003 through the present.

***Document Request 21:*** All documents relating to any investigation conducted as a result of any report or complaint referred to in Request No. 20 above.

***Document Request 22:*** All documents related to any charge of legally prohibited discrimination, harassment, or retaliation filed against Peoria Public School District 150 or any of its agents with the Illinois Department of Human Rights and/or EEOC from January 1, 2003 to the present.

***Document Request 29:*** To the extent not sought by a previous request and provided in response thereto, all documents from or relating to all lawsuits, administrative proceedings, investigations and/or other proceedings or procedure related to any formal or informal complaints, claims, and/or charges made by anyone alleging a violation of his or her federal and/or constitutional civil rights by Peoria Public Schools District 150 and/or any Defendant and/or any of its employees and/or agents.

On November 6, 2009, Plaintiff sent a letter to Defendants summarizing the discovery disputes and explaining his position. (d/e 30, Ex. 3). Defendants responded and further correspondence followed, but the parties were unable to agree on whether discrimination and retaliation complaints made by employees outside Plaintiff's department were discoverable. (d/e 30, Exs. 4-6). Plaintiff accordingly filed the instant motion to compel on December 7, 2009, in accordance with this Court's extension of the deadline for filing that motion. (11/23/09 text order). The Court has extended fact discovery to March 1, 2010. (1/11/10 text order).

## Legal Standard

Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense–. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Discovery of relevant information is subject to Rule 26(b)(2)(C), which allows limitations on discovery if, for example, the burden of the discovery "outweighs its likely benefit" or if it is unreasonably cumulative or duplicative. Fed. R. Civ. P. 26(b)(2).

The party opposing discovery has the burden of proving that the requested discovery should be disallowed. Golden Valley Microwave Foods, Inc. v. Weaver Popcorn Co., 132 F.R.D. 204, 207 (N.D. Ind. 1990). "A request for discovery should be considered relevant if there is 'any possibility' that the information sought may be relevant to the subject matter of the action." Id. at 212 (quoted cite omitted). "For the purpose of discovery, relevancy will be construed broadly to encompass 'any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" Chavez v. DaimlerChrysler Corp., 206 F.R.D. 615, 619 (S.D. Ind. 2002). District courts have broad

discretion in matters relating to discovery.   See Brown-Bey v. United States, 720 F.2d 467, 470-471 (7th Cir.1983).

## Analysis

Plaintiff contends that "Defendants refuse to produce any information beyond complaints of 'reverse' discrimination within the Campus Police Department." (d/e 30, p.4).  It appears, however, that Defendants have already provided all the requested information as to employees in Plaintiff's department, the Campus Security Department, including a discrimination complaint by a black female security officer.  (d/e 30-1, Answer to Interrogatory 11).[1]  Thus, the information sought regarding Security Department employees does not appear to be an issue.  Further, Plaintiff "withdraws his demand for information and documents related to complaints of other genres of discrimination/harassment other than race and retaliation." (d/e 30, p. 3).  The issue before the Court is thus narrowed to whether all race discrimination and retaliation complaints by School District employees *outside* the Campus Security Department are discoverable in this case.  Defendants assail these requests as overly broad, unduly

---

[1] According to Defendants, they have already produced "over 10,000 pages of documents," including all the requested personnel files of those in the Security Department and the personnel files of Defendants.  Id.

burdensome and expensive, and seeking irrelevant or inadmissible information.[2]

Defendants contend that complaints from employees outside the Campus Security Department are irrelevant because the Security Department has its own unique chain of command, policies, and collective bargaining agreement. Defendant Scales, for example, is the head of the Security Department only, not of other departments, and Scales answers to an associate superintendent who is not a defendant. Other School District employees have their own policies and collective bargaining agreements according to their positions (teacher, cafeteria worker, etc.). Defendants thus conclude that no School District employees outside the Security Department could be comparably situated to Plaintiff, due to these differences, making any discrimination complaints by them irrelevant.

Plaintiff does base his claims in part on allegations that similarly situated black employees were treated more favorably. (Complaint, d/e 1, ¶ 14). The unique attributes of Plaintiff's job and the Security Department will make finding a "similarly situated" employee outside the Security Department highly unlikely. However, the "similarly situated employee"

---

[2]Defendants also objected on the grounds of privilege, but the parties agree that this dispute is not ripe and is therefore not before the Court. (d/e 30, p. 4).

route is not the only path to proving his claim. The similarly situated employee generally comes into play when a plaintiff uses the indirect, burden-shifting method of proof. There is also the direct method of proof, which involves direct or circumstantial evidence of discriminatory motive. *See* Rudin v. Lincoln Land Community College, 420 F.3d 712, 719-20 (7th Cir. 2005); Schandelmeier-Bartels v. Chicago Park District, 2008 WL 4855649 (N.D. Ill. 2008)(not reported in F.Supp.2d)(summary judgment granted on indirect method because no similarly situated comparator identified, but case survived on direct method). For example, Scales purportedly commented to Plaintiff that he was being disciplined because he is white (see *infra*); that is direct evidence under the direct method of proof. 429 F.3d at 720-21; Smith v. Waste Management, 2008 WL 2078064 *5 (C.D. Ill. 2008, Judge Mihm)(under direct method of proof, employees' comments could be interpreted to show management was "predisposed to treat African American employees more favorably because they were afraid of being sued . . . ."). Circumstantial evidence can also be used under the direct method to show discriminatory intent. Id.

   Plaintiff's requests appear to be, at least in part, targeting circumstantial evidence to proceed under the direct method of proof.

Evidence of a pattern of discrimination could be circumstantial evidence of discriminatory intent under the direct method of proof. Rudin, 420 F.3d at 721 (circumstantial evidence under direct method includes "behavior toward or comments directed at other employees in the protected group")(affirmative action plan and supervisor's statements about pressure to hire minority were relevant circumstantial evidence to establishing discriminatory intent under direct method). Plaintiff also alleges a district-wide policy of discrimination against whites, not just discrimination within the Security Department. (Complaint, d/e 1, ¶ 15). Evidence of other discrimination complaints against Defendants, even those filed by employees outside the Security Department, could be relevant evidence of such a policy (or lead to relevant evidence).[3]

    Courts have appropriately limited discovery to an employer's particular department where those responsible for the adverse employment actions were primarily confined to that department, like the cases cited by Defendants. *See, e.g.,* Semple v. Federal Express Corp., 566 F.3d 788,

---

[3]Plaintiff also argues that the evidence is relevant to pretext and the "background circumstances" requirement for reverse discrimination cases. (d/e 48, p. 7); McDonnell Douglas Corp., 411 U.S. 792 (1973)(discussing indirect method of proof and how pretext can be shown); Hague v. Thompson, 436 F.3d 816 (7th Cir. 2006)(discussing modified standard of proof under indirect method for reverse discrimination claim–"background circumstances" must create inference of discriminatory intent).

794 (8th Cir. 2009)(discovery limited where local branch terminated plaintiff; management outside district was only involved in reviewing internal appeals); Sallis v. University of Minnesota, 408 F.3d 470, 478 (8th Cir. 2005)(affirming limit of discovery to department in which plaintiff worked where the allegations focused on the supervisors in that department); Rubenstein v. Administrators of Tulane Educ. Fund, 218 F.3d 392, 398 (5th Cir. 2000)(discovery limited to department where the employment decisions were made within department; school-wide tenure committee review was "highly deferential"); Sommerfield v. City of Chicago, 613 F.Supp.2d 1004, 1008-09, 1017 (N.D. Ill. 2009)(discovery limited to particular police district where officers responsible were in that district and discipline decisions were not centralized); Chavez v. DaimlerChrysler Corp., 206 F.R.D. 615, 617, 619 (S.D. Ind. 2002)(discovery restricted to plant where plaintiff worked, where his discrimination allegations were against supervisor at plant).

    Here, however, the adverse employment actions were not taken solely, or primarily, by those in the Security Department. Defendant Hinton (the Superintendent) and Defendant Broderick (former Human Resources Director), recommended Plaintiff's termination to the School Board, and the

School Board made the final decision on the termination.  (d/e 30, Ex. 1, Answer to Interrogatory 2). Defendant Davis appears to have been the acting Director of Human Resources when Plaintiff was suspended, and Davis testified at the arbitration regarding Plaintiff's suspension.  (d/e 30-1, Answer to Interrogatory 2; d/e 34-9, p. 7).  While these defendants may have relied on information or recommendations provided by Defendant Scales, they still arguably played a significant role in Plaintiff's suspension or termination.  They are also alleged, by virtue of their positions, to be responsible for implementing the alleged discriminatory policy district-wide: "operating from the top down, the school district gives preferential treatment to black employees, . . . ."  (Plaintiff's Reply, d/e 48, p. 1).   The Court therefore cannot conclude that the relevant pool of employees is limited to those in the Security Department.[4]

---

[4]Defendants cite Rennie v. Dalton, 3 F.3d 1100, 1110 (7th Cir. 1993), in which the Seventh Circuit affirmed the denial of a motion to compel Navy documents regarding sexual harassment, in part because the documents dealt with Navy personnel, not civilians like the plaintiff in that case.  The district court in Rennie, however, found that the plaintiff had "failed to demonstrate any relation between the documents . . . and her employment . . . ."  Here, Plaintiff has made that demonstration.  Additionally, the district court in Rennie found that the plaintiff could obtain the documents from a different source and "extensive discovery and testimony" had already been allowed "regarding all prior sexual harassment claims against" the employer. Id.

Defendants also argue that discrimination complaints by minorities are irrelevant, since this is a reverse discrimination claim.[5] A discrimination complaint by a black employee, Defendants posit, could not possibly help prove Plaintiff's claim that the School District treats black employees more favorably than white employees.

Plaintiff counters that discrimination complaints by black employees are relevant to show motive: "It is reasonable to conclude that discovery of internal complaints by African-Americans–and the School District's response thereto– may lead to admissible evidence of the School District's attitude toward and concerns about those complaints." (d/e 30, p. 13). Plaintiff's theory is that complaints by black employees motivated Defendants to treat black employees more favorably "in an effort to appease its predominantly African-American community." Id.

In support of this theory, Plaintiff points to his deposition, in which he testified that Defendant Scales admitted to Plaintiff that Scales could not discipline black officers even if they were not performing adequately. (d/e 48, p. 3). Scales also purportedly told Plaintiff that Plaintiff was being

---

[5] Defendants do not appear to dispute that employee complaints of reverse discrimination might be, or lead to, relevant circumstantial evidence. Such evidence could be relevant to showing a pattern of discrimination against white employees.

disciplined "'because you're white and I can.'"  Id.  Plaintiff also highlights deposition testimony of a school board member "that black members of the community have accused the board of being racist and that the Board is sensitive to these concerns."  (d/e 48, p. 8, *citing* Wolfmeyer Dep. at 19-23).[6]

    The Court cannot conclude that discrimination complaints by black employees lacks any relevance.  The Court acknowledges that the existence of those complaints could actually cut against Plaintiff's claims: A black employee who has filed a discrimination complaint obviously does not feel favorably treated.  However, the complaints might also support a motive for reverse discrimination which could be considered along with Scales' purported admissions and the school board member's statements about the board's sensitivity to the black community's concerns. Additionally, Defendants' responses to discrimination complaints by black employees, as compared to their responses to white employees' reverse discrimination complaints, could be relevant to proving Plaintiff's claim of a district-wide policy in favor of black employees.

---

[6]These pages do not appear to be attached, but the Court accepts Plaintiff's characterization for purposes of this order.

Defendants predict that the information sought is likely to be excluded under the Rules of Evidence because its potential for confusion, prejudice and delay will outweigh any marginal probative value. That may be the end result, but that determination is premature at the discovery stage. At the discovery stage, the Court cannot rule out the information's possible relevance to Plaintiff's claims. Defendants may also be correct that the complaints are not good evidence of discrimination: that is, better evidence would be a black employee who committed similar infractions but was treated more favorably. (d/e 34, p. 9). However, determinations of admissibility and probative force belong at summary judgment or trial.

Plaintiff's requests as framed, though, are too extensive. *See* Chavez, 206 F.R.D. at 619-20 ("courts must set reasonable boundaries on the type of discovery permissible in Title VII actions when such a 'pattern of discrimination' theory is propounded.")(quoted cite omitted). Plaintiff seeks all race discrimination complaints filed against *any* employee or agent of the School District for the past seven years, including any informal or verbal complaints. Identifying informal or verbal complaints would be an unwieldy and unworkable task. What would qualify as an informal complaint? A

passing remark by an employee to a school board member? How would these verbal, informal complaints be located?

Further, the possible relevance of all race discrimination complaints against *nonparty* School District employees is too speculative to justify the burden of production and the ensuing delay of this case. The request would ensnare every complaint filed by any employee against another employee, regardless of the Defendants' knowledge of or involvement in the incident. Although Defendants do not detail the exact burden of ferreting out this information, they do maintain that over 2,700 persons were employed by the district from Fall 2006 to Fall 2009. (d/e 34, p. 4). That is a large number of employees, and Plaintiff seeks over seven years of records.

The Court concludes that Plaintiff's requests should be limited to: 1) employees' written race discrimination complaints against *Defendants*; and, 2) employees' written race discrimination complaints against others only to the extent that one of Defendants handled the complaint in the scope of his employment. By "handle" the court means play some part in deciding what official action, if any, to take in response to the complaint.

These categories will capture evidence relevant to Plaintiff's theories of liabilities. The first category will reveal reverse discrimination complaints

against Defendants district-wide, which could be relevant to showing a pattern of reverse discrimination. It will also reveal discrimination complaints by blacks against Defendants district-wide, which could be relevant to Plaintiff's theory that complaints by black employees motivated Defendants to favor blacks. Some of this information has probably already been produced with Defendants' personnel files.

The second category will uncover evidence about how Defendants handle employee discrimination complaints that come before them. This is relevant to Plaintiff's theory that there may be a disparity in the handling of those complaints based on race. This information has not already been produced, but conceivably it would not be hard to construct. Those defendants responsible for handling discrimination complaints within the scope of their employment presumably have some written record of the complaints and the action taken. In any event, at this point Defendants have not sufficiently detailed what the burden would be to producing that information, so the Court cannot find that an undue burden exists. *See* In re Sulfuric Acid Antitrust Litigation, 231 F.R.D. 351, 360-62 (N.D. Ill. 2005); Schapp v. Executive Industries, Inc., 130 F.R.D. 384, 386-87 (N.D. Ill. 1990)(party resisting discovery must detail burden of production).

Plaintiff's requests regarding retaliation claims will also be limited. Plaintiff seeks *all* complaints of retaliation, arguing that it is relevant to show a policy of retaliation for exposing illegal discrimination, and "retaliation claims cuts across all the protected classes."  (d/e 30, p. 14)("Defendants should be ordered to produce the requested discovery related to all claims of retaliation, regardless of the underlying complaint of discrimination or harassment.").  This suffers from the same overbreadth as the request for discrimination complaints.  The Court will limit the request to complaints of retaliation for making a race discrimination complaint described in categories one and two above.  This will uncover potentially relevant evidence regarding Defendants' purported policy or practice of retaliation in relation to complaints of discrimination.  Retaliation complaints regarding other kinds of discrimination would be unreasonably cumulative and would impose an undue burden on Defendants in light of its speculative additional benefit.

The Court will also limit the temporal scope of the requests from January 1, 2003 to December 31, 2008.  This shortened period is the two year period before the date alleged in the Complaint and is approximately one year after the date of the filing of the Complaint herein.  That six-year

period is sufficient for discovery purposes and helps relieve some of the burden of production.

IT IS THEREFORE ORDERED that Plaintiff's motion to compel (d/e 30) is granted in part and denied in part.

Defendants are directed to produce to Plaintiff:

1) all documents related to written reports and/or complaints of racial discrimination made by any employee, agent or official of the School District against one or more Defendants from January 1, 2003 through December 31, 2008;

2) all documents related to written reports and/or complaints of racial discrimination made by any employee, agent or official of the School District against one or more employees, agents or officials of the School District, from January 1, 2003 to December 31, 2008, in which one or more Defendants, acting in the scope of his or its employment or official duties, participated in determining what action, if any, would be taken in response to such complaint;

3) all documents related to written reports and/or complaints of retaliation against one or more Defendants regarding a complaint of racial discrimination described in paragraphs 1 and 2 above;

4) all documents relating to any investigation conducted as a result of the complaints described in paragraphs 1, 2 and 3 above;

5) all documents related to any charge of racial discrimination filed against Peoria Public Schools District 150 or one or more of the Defendants with the Illinois Department of Human Rights and/or EEOC from January 1, 2003 to December 31, 2008.

The School Board is directed to answer the following interrogatory:

6) identify any written complaints (internal and/or to third parties), grievances, EEOC charges, IDHR charges and/or lawsuits against one or more of Defendants, regarding race discrimination or retaliation for making such written race discrimination complaint from January 1, 2003 to December 31, 2008. For each, identify the name of the complainant and person(s) accused of wrongdoing; the date and substance of the complaint; and, the resolution, outcome and/or result of the complaint;

Defendants to comply with these directives by February 26, 2010.

The Court *sua sponte* extends fact discovery to April 1, 2010 and the dispositive motion deadline to April 15, 2010.

The motion to compel is otherwise denied.

ENTER:    January 26, 2010

*s/ Byron G. Cudmore*
_____
BYRON G. CUDMORE
UNITED STATES MAGISTRATE JUDGE