**UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION**

| | | |
|---|---|---|
| STEVEN STIMELING, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 07-1330 |
| | ) | |
| BOARD OF EDUCATION PEORIA PUBLIC | ) | |
| SCHOOLS DISTRICT 150, KENNETH | ) | |
| HINTON, THOMAS BRODERICK, CHARLES | ) | |
| DAVIS, and RON SCALES, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

Before the Court are Motions and Supplemental Motions in Limine by both parties raising numerous issues to be resolved before trial.  Each issue will be addressed in turn.

**I.      Plaintiff's Combined Motions in Limine** [#66]

**A.      Arbitrator's Opinion and Award**

Although Plaintiff does not oppose the jury being informed that he was reinstated to his position in August 2007 following an arbitration, he argues that evidence and findings underlying the June 29, 2007, Opinion & Award of the arbitrator should be excluded.  Plaintiff grieved his suspension and termination, and this grievance was the subject of an arbitration.  The arbitrator ordered that Plaintiff be reinstated to his position and that his termination be converted into a one-year suspension without pay.  Plaintiff argues that this evidence is irrelevant to any issue of liability or damages, as none of the racial discrimination or retaliation issues involved in this case were presented to the

arbitrator, and would be unfairly prejudicial under Rule 403. Finally, Plaintiff contends that the arbitrator's Opinion & Award is inadmissible hearsay.

Defendants' respond that the arbitrator was presented with three issues: (1) whether his request to review his 30-day suspension was timely; (2) whether he was disciplined for "just cause"; and (3) what the appropriate remedy should be. Defendants argue that the arbitrator's decision finding just cause is relevant and admissible on the issue of their legitimate, non-discriminatory reason for the employment actions.

In holding that an employee has the right to fully pursue a remedy under a grievance-arbitration clause of a CBA and a federal cause of action under Title VII, the Supreme Court specifically acknowledged that "[t]he arbitral decision may be admitted as evidence and accorded such weight as the court deems appropriate." Alexander v. Gardner-Denver Co., 415 U.S. 36, 60 (1974); Barnes v. St. Catherine's Hospital, 563 F.2d 324, 330 (7th Cir. 1977) (finding that it was not an abuse of discretion to admit and consider the decision of an arbitrator upholding a plaintiff's discharge in race discrimination action). Factors to be considered in determining the weight to be accorded include the existence of provisions in the CBA that conform substantially with Title VII, the degree of procedural fairness in the arbitration, the adequacy of the record with respect to the issue of discrimination, and the special competence of particular arbitrators. Id.; Barrentine v. Arkansas-Best Freight System, Inc., 450 U.S. 728, 743 (1981). That being said, the admissibility of an arbitral decision is within the discretion of the district court; the court may either admit or exclude the decision based on the circumstances of the case. Jackson v. Bunge Corp., 40 F.3d 239, 246 (7th Cir. 1994).

Here, the arbitrator was jointly selected by the parties. Plaintiff testified and was represented by the attorney for his union. The arbitrator expressly noted that in his findings of fact, he "relied substantially on direct testimony only, often that of the Grievant himself." (Arbitral Decision, at 6 n. 4) The record indicates that Plaintiff was afforded procedural fairness and that the arbitrator displayed no evidence of bias or close-mindedness. Of the three reasons for the termination stated, the arbitrator determined that his suspension and misuse of sick time did not support a finding of just cause. Id., at 10. Although the third reason, namely failure to follow directives from administrators, was sufficient to find just cause, it did not warrant termination as a remedy. Id. The arbitrator did not render a decision regarding any allegation of racial discrimination, minimizing any legitimate possibility that any juror would simply substitute the decision of the arbitrator for his or her own.

The Court also finds that, if properly authenticated, the arbitrator's decision would likely be admissible under Fed. R. Evid. 803(8)(C), which excludes "records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth . . . factual findings resulting from an investigation made pursuant to authority granted by law" from the hearsay rule. Accordingly, the Court denies Plaintiff's request to exclude the arbitral decision in its entirety, but will consider an appropriately worded cautionary instruction or request for partial redaction if requested.

**B.    Testimony by Defendants' Counsel and Reliance on Advice of Counsel**

In a May 27, 2010, letter, Defendants' trial counsel stated that he did not currently intend to call any of the lawyers from the Kavanaugh firm as witnesses, but that statements taken by them during the course of their representation of the school district could become relevant for impeachment purposes, and it would be impossible to give a definitive answer without knowing the scope of the case Plaintiff would present. Given this uncertainty, Plaintiff asks the Court to bar any such evidence from presentation at trial.  As counsel were not disclosed as witnesses during discovery, and Defendants' claimed privilege relating to their communications with counsel, as well as expressly denied reliance on advice of counsel, Plaintiff argues that testimony or evidence from any of the Kavanaugh firm attorneys must be excluded.

Defendants respond that they will not present a defense based on reliance on the advice of counsel and that no witnesses from the Kavanaugh firm are listed on its witness list, but reserve the right to call these witnesses solely for purposes of impeachment.  Defendants will be held to these representations.  However, as witnesses called solely for purposes of impeachment are excluded from disclosure requirements by the very rule Plaintiff cites in support of his argument, Plaintiff's attempt to obtain a total ban on these witnesses is without merit.

**C.    Dr. Best, Dr. Campion, and Background Investigation by City of Washington**

In response to a psychological examination in connection with a 2000 application for employment with the City of Peoria, Dr. Michael Campion concluded that Plaintiff was unqualified for employment.  Plaintiff then sought a second opinion from Dr. Harold

4

Best, who advised Dr. Campion that he had no reason to negate Dr. Campion's opinion. Sometime later, when Plaintiff applied for employment with the City of Washington Police Department, Dr. Best conveyed his opinions from Plaintiff's psychological examination to the investigator. Plaintiff requests the exclusion of this testimony and evidence because they have not been disclosed as expert witnesses in this case, and their opinions are irrelevant, highly prejudicial, and constitute improper character evidence.

Defendants make no response to this aspect of Plaintiff's Motion in Limine and are thereby deemed to have conceded that they will not present testimony from Dr. Campion or Dr. Best and will not offer the background investigation report prepared for the City of Washington.

### D.    After-Acquired Evidence

Plaintiff cites McKennon v. Nashville Banner Publishing Co., 513 US 352, 359-60 (1995), and Kristufek v. Hussmann Foodservice Co., Toastmaster Division, 985 F.2d 364, 369 (7th Cir. 1993), in support of his assertion that Defendants should not be allowed to reference or rely on any evidence that they did not discover until after the employment decisions at issue were made. Specifically, he objects to any attempt to introduce: (1) evidence regarding complaints about his job performance occurring after his termination; (2) his employment and performance with the City of Eureka; (3) a September 15, 2006, memo from Attorney Paulsen to the School Board that was not received by any Defendant until after Plaintiff's termination; and (4) information about his mental/emotional condition that was not learned until discovery in this case.

Defendant responds that evidence that was unknown to them at the time of the employment decisions may be material to countering Plaintiff's claim that he performed his job functions adequately, a critical element of proof under the McDonnell Douglas burden-shifting methodology. However, the Seventh Circuit has "held repeatedly that the *McDonnell Douglas* burden-shifting method of proof is relevant only before trial, both to determine whether the plaintiff has met [his] burden of creating a triable issue of material fact and to determine the sequence of presenting evidence at trial." Gaffney v. Riverboat Services of Indiana, Inc., 451 F.3d 424, 453 (7th Cir. 2006), *citing* Mattenson v. Baxter Healthcare Corp., 438 F.3d 763, 767 (7th Cir. 2006); St. Mary's Honor Center v. Hicks, 509 U.S. 502, 510-12 (1993); Hennessy v. Penril Datacomm Networks, Inc., 69 F.3d 1344, 1350 (7th Cir. 1995). That being said, Defendants' explanation for how this evidence may be relevant indicates that rather than being offered to bolster their stated reasons for any employment decisions, it would be used to impeach or rebut contrary testimony by the Plaintiff with respect to his testimony regarding his job performance.

Defendants concede that they will not offer evidence regarding complaints about Plaintiff's job performance in July 2009 or the September 15, 2006, memo from Attorney Paulsen. However, they argue that evidence that Plaintiff was working for the City of Eureka while on sick leave from his position should be allowed to show that he was not meeting their legitimate expectations of providing truthful information. With all due respect, this use of information that was not known to them at the time the employment decisions were made would fly in the face of McKennon and Kristufek and will not be allowed.

Defendants further suggest that evidence of Plaintiff's work record with the City of Eureka is relevant to show that he declined overtime work in order to be available to work in Eureka. In this respect, the after-acquired information is not being used to justify their employment decision, but rather would be used to rebut any claim by Plaintiff that he was denied overtime work on these occasions or in the calculation of any damages awarded for such a claim. While this evidence may be subject to specific objections at trial, the Court cannot find at this stage of the proceedings that it would not be admissible for this limited purpose.

Defendants contend that evidence of Plaintiff's mental/emotional condition (i.e., suicidal ideation) that was not learned until discovery is relevant to the jury's determination of whether their suspicion that Plaintiff was abusing his sick leave was reasonable. They argue that the evidence subsequently obtained from his counselor would show that Plaintiff was either trying to hide information about his mental health condition from his employer or was lying to the counselor in order to obtain an excuse for missing work.

The Court has previously held that the frame of reference for determining Defendants' liability or the legitimacy of their reasons for termination is based on the information and circumstances known to them at the time the decision was made and that information, such as explanations from the mental health providers, that was not obtained until later, has no probative value on the issue of liability. (8/25/10 Order on Motion to Bifurcate at 2) Defendants have not given the Court any basis to reconsider that ruling, and it remains the law of the case. However, in so holding, the Court recognized that evidence that Plaintiff and/or his providers stonewalled their requests

for further information regarding his condition and efforts made by Defendants to obtain additional information prior to the time that the decision to terminate Plaintiff's employment was made is fair game for trial.  Id., at 2-3.

Defendants further maintain that this information is admissible with respect to damages testimony, but this question is not presently before the Court.  Plaintiff's Motion only seeks to restrict the use of such evidence on the issue of liability, and the Court has in no way precluded the use of this information if the case proceeds into the damages phase of the trial.

### E.    Commenting on Plaintiff's Counsel

Plaintiff asks that Defendants be barred from commenting upon their opinion of, the reputation of, or the ability of Plaintiff's counsel and their law firm.  This goes without saying.  Neither party shall make any comments about opposing counsel.

### F.    Burden on Taxpayers

Plaintiff next requests that Defendant refrain from arguing that either the school district or taxpayers might be burdened by the outcome of the trial.  This also goes without saying, and neither party shall comment or make any suggestion as to who shall ultimately bear the burden of satisfying any award of damages in favor of Plaintiff.

### G.    General Litigiousness and/or Societal Cost of Litigation

Finally, Plaintiff argues that Defendants should be prohibited from commenting on the general litigiousness of society and a "lottery mentality."  Again, this goes without saying and shall not be addressed by either party.

## II.    Plaintiff's Supplemental Combined Motions in Limine [#71]

### A.    April 1, 2004, Letter from John Stimeling

Plaintiff objects to the introduction of a letter from John Stimeling that was placed in his personnel file.  Defendants have voluntarily withdrawn this exhibit from their exhibit list, rendering Plaintiff's objection moot.

### B.    June 4, 2004, Grievance Response from Jerome Greer to Sylvester Bush

Plaintiff argues that this letter from District 150's HR Director to the president of his union is irrelevant to any issue at trial and is further unauthenticated.  Defendants respond that Bush is on their witness list and is able to authenticate the document. Moreover, Defendants assert that the letter is a response to a grievance filed by Plaintiff requesting that he receive more overtime, and that the Plaintiff has not objected to the admissibility of the grievance itself.  Nor is the letter being offered for the truth of the matter asserted, but rather as indicative of the lack of any claim of race based discrimination in Plaintiff's overtime grievance and the union's decision not to pursue the grievance.  As the Court cannot find that this letter is not relevant to Plaintiff's claim for denial of overtime or corresponding damages, this aspect of the motion must be denied.

### C.    EEOC Charges and Exhibits Related to Gender Discrimination or Sexual Harassment

As no claim is brought in this lawsuit regarding gender discrimination, sexual harassment, or retaliation based on complaining about such conduct, Plaintiff argues that no evidence regarding these claims should be allowed at trial.  Defendants respond that the EEOC charge at issue is the charge upon which this complaint is based. Furthermore, it is argued that the charge could be interpreted as Plaintiff attributing his

discipline and termination to retaliation for his complaining about sexual harassment rather than racial discrimination.  As such, Defendants contend that Plaintiff's statement could be deemed an admission under Rule 801(d)(2).

Statements contained in EEOC charges are presumed to be inadmissible, and the Court finds no reason that this presumption should not apply here.  *See* Stolarczyk v. Senator International Freight Forwarding LLC, 376 F.Supp.2d 834, 840-41 (N.D.Ill. 2005), *citing* Moffett v. McCauley, 724 F.2d 581, 584 n.1 (7th Cir. 1984).  That being said, Defendants may ask Plaintiff generally if he filed a charge of discrimination on a certain date that attributed his discipline at least in part to retaliation for complaining about sexual discrimination and make their point without specifically referencing the fact that the  charge also asserted sex discrimination.

### D.    After Acquired Information

As the Court has previously held in this matter, under Kristufek and McKennon, the frame of reference for determining Defendants' liability or the legitimacy of their reasons for termination is based on the information and circumstances known to them at the time the employment decisions at issue were made.   Plaintiff objects to the admissibility of several additional documents that he contends were unknown to Defendants at the time they made the decisions in question.

A September 2009 e-mail from Plaintiff to Defendant Scales states, "Chief, your Wife said Hi!  She said let her know When your ready for stew."  After explaining that he had been asked to convey this message to Scales by a former nanny who was working in the same building as Plaintiff as a substitute teacher, Plaintiff objects that this email is irrelevant, as it post-dates his termination by three years.   Defendants argue that the

email is probative of the relationship that existed by Plaintiff and Scales at the time it was written.  Given Plaintiff's claims that he was denied overtime and continued to experience post-traumatic stress disorder during the time that this email was created, the Court cannot find that evidence of the relationship between Plaintiff and Scales is irrelevant.  Accordingly, the request to bar this evidence is denied.  The Court will, however, consider a reasonable cautionary instruction if requested.

Plaintiff renews his objection to various documents regarding his employment with the City of Eureka.  The Court addressed this evidence in Section I.D. above, and the same rulings apply.

Plaintiff next challenges the introduction of the entire arbitration transcript from the proceedings that occurred in April 2007.  In Section I.A. of this Order, the Court denied Plaintiff's request to exclude the subject of the arbitration and award, and this argument appears to follow along the same lines as the argument Plaintiff made in connection with that issue.  Defendants have clarified that they do not intend to introduce the transcript in its entirety, but rather may use discrete parts of the transcript for impeachment purposes, such as to rebut assertions by Plaintiff regarding his job performance.  Plaintiff agrees that each party should be permitted to use the transcript for this purpose.  As the need for or extent of impeachment evidence cannot be known before trial, both parties are directed to notify the Court prior to offering any portion of the transcript at trial so that opposing counsel may have the opportunity to make specific objections to the designated portions outside the presence of the jury.

### E.    Information Known to and Relied on by Decisionmakers

Plaintiff argues that evidence that was not known or relied on by the decisionmakers in the case is irrelevant and should be excluded.  Specifically, certain witnesses observed the conduct by Plaintiff that was stated as forming the basis for his discipline, but Plaintiff contends that the decisionmakers did not communicate with these witnesses.  For example, Sharonda Buckner, Trish Curran, and Lori Wells witnessed Plaintiff's conduct at Sterling School between June 19-22.  However, Defendant Broderick admits that he never spoke with these witnesses, Defendant Davis spoke only with Curran, and Scales obtained written statements from some of these witnesses and submitted them to Davis.

This appears to be another permutation of the after-acquired evidence arguments previously addressed in this Order, and the same ruling necessarily applies. To the extend that the information was known to the decisionmakers at the time the decisions in question were made, it is fair game.  To the extent that it is used for impeachment, it is also fair game.  If there is no evidence indicating that the information was within the knowledge of the decisionmakers at the relevant time, Defendants are directed to notify the Court prior to offering such evidence so that the Court can consider any specific objections outside the presence of the jury.

### F.    Failure to Mitigate

Plaintiff moves to bar Defendants from arguing that Plaintiff failed to mitigate his damages.  In support of this request, Plaintiff maintains that Defendants never supplemented their discovery response to identify additional facts relied on in support of this affirmative defense, other than to indicate that Plaintiff took action to terminate his

employment with the City of Eureka.  Furthermore, he argues that any award of back pay cannot be reduced by the income he made from jobs held prior to discharge that he continued to hold after his termination because such earnings do not constitute "interim amounts earned in mitigation of damages" under 42 U.S.C. § 2000e-5(g)(1).

With all due respect, this argument asks the Court to make a fact-based determination that should have been brought as a motion for summary judgment with appropriate documentation, supporting affidavits, etc.  Plaintiff failed to pursue dispositive relief and cannot now do so under the guise of a motion in limine.  That being said, the fact intensive inquiry involved in this issue is not appropriately considered in a motion in limine, as a determination of whether and what percentage of any time worked for the Eureka Police Department constitutes "interim earnings" or whether his termination of his employment with that department constitutes a failure to mitigate will require the taking of evidence and the assessment of credibility.  In the event that the trial proceeds to the damages phase, Defendants will be allowed to present evidence in support of its mitigation defense subject to specific objections by Plaintiff at that time.

## III.    Defendants' Motion in Limine [#59]

### A.    Employees Not Similarly Situated

Defendants assert that Plaintiff should be precluded from offering evidence concerning comparable employees who were not in fact similarly situated to him.  They argue that he has cherry-picked a select handful of African-American and hispanic officers while ignoring the treatment of comparable white officers and material differences among the comparators, such as different supervisors.  With respect to

allegations of cherry-picking purported comparables, Defendants' argument goes to the weight to be attributed to such evidence rather than its admissibility; Defendants are free to explore this argument during cross-examination or through their own witnesses. *See* Humphries v. CBOCS West, Inc., 474 F.3d 387, 405 (7th Cir. 2007).

The contention that Plaintiff's designated comparables are not similarly situated is another matter, as it is well established that generally, "in disciplinary cases where there is no direct evidence of discrimination – in which a plaintiff claims that he was disciplined by his employer more harshly than a similarly situated employee based on some prohibited reason – a plaintiff must show that he is similarly situated with respect to performance, qualifications, and conduct." Peirick v. Indiana University – Purdue University Indianapolis Athletics Dept., 510 F.3d 681, 687-88 (7th Cir. 2007); Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617-18 (7th Cir. 2000), *citing* Byrd v. Ronayne, 61 F.3d 1026, 1032 (1st Cir. 1995). This normally will involve a demonstration that the employees "dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." Radue, 219 F.3d at 617-18. Defendants argue that Plaintiff's comparables had different supervisors, disciplinary histories, and conduct for which they were disciplined.

Plaintiff responds that while a plaintiff must produce evidence of similarly situated employees under the indirect method of proof, he is proceeding by presenting a convincing mosaic of circumstantial direct evidence of discrimination. Plaintiff cites Hasan v. Foley & Lardner, LLP, 552 F.3d 520, 529-30 (7th Cir. 2008), for the proposition

that substantial similarity is not required under the direct method. This is because under the direct method, a plaintiff may introduce three types of evidence of discrimination:

> The first consists of suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn. . . . Second is evidence, whether or not rigorously statistical, that employees similarly situated to the plaintiff other than in the characteristic (pregnancy, sex, race, or whatever) on which an employer is forbidden to base a difference in treatment received systematically better treatment. . . . [T]hird is evidence that the plaintiff was qualified for the job in question but passed over in favor of (or replaced by) a person not having the forbidden characteristic and that the employer's stated reason for the difference in treatment is unworthy of belief . . . .

Rudin, 420 F.3d at 720-21, *quoting* Troupe v. May Dep't Stores, 20 F.3d 734, 736 (7th Cir. 1994); Hemsworth v. Quotesmith.Com, Inc., 476 F.3d 487, 491 (7th Cir. 2007).

Accordingly, Plaintiff is correct that proof of disparate treatment of similarly situated employees is not required to make a direct case of discrimination. He may reference behavior toward other white employees under the first option without any requirement of substantial similarity and may demonstrate that he was passed over or replaced by a non-white employee and that Defendants' stated reason is pretextual without demonstrating substantial similarity. That being said, however, if Plaintiff intends to pursue the second option and present evidence regarding the "systematically better treatment" of non-white employees outside of his protected class, they must be similarly situated.

To the extent that Plaintiff attempts to suggest that he may pursue the second option by reading the words "similarly situated" out of the equation, he is incorrect. In

Hasan, the plaintiff attempted to present evidence only under the first and third options. 552 F.3d at 527. To the extent that he relied on evidence of the treatment of other employees, it was "me too" evidence regarding other employees within his protected group and not evidence regarding the treatment of employees outside of his protected group. Id., at 527, 529. The same is true of Sprint/United Management Co. v. Mendelsohn, 552 U.S. 379 (2008), also relied on by Plaintiff. The evidence under consideration was testimony by five other employees claiming to have been discriminated against as part of the same protected class as the plaintiff, which was expressly distinguished from "the entirely different context of a plaintiff's allegation that nonminority employees were treated more favorably than minority employees." Id., 552 U.S. 381, 386.

To the extent that Plaintiff attempts to demonstrate more favorable treatment of similarly situated non-white employees, Defendants object that seven of his disclosed comparables are materially distinguishable based on supervision by different principals, factual differences in conduct, and awareness of such conduct by Defendants.

Defendants argue that Sandra Figaro ("Figaro"), an African-American female officer in the security department, was repeatedly late, misused sick leave, was insubordinate to her Sergeant, and used mace without receiving a suspension or discipline. Defendants maintain that tardiness is not a stated reason for Plaintiff's discharge, but Plaintiff correctly notes that it is one of the stated reasons for his suspension. They further assert that there is no evidence that any of the Defendants were aware of Figaro's alleged insubordination or that she was on medical leave from her job while working another part-time police job. However, Plaintiff has pointed to

evidence indicating an awareness of this conduct by at least Scales and issues of fact regarding the similarity of the misconduct alleged. Accordingly, the Court cannot find at this time that Figaro is not an adequate comparable.

Sylvester Bush ("Bush") was an African-American officer in the security department who was allegedly tardy, insubordinate, and an abuser of sick leave[1] but received no discipline. Defendants' claim regarding tardiness or leaving work early suffers from the same flaw as the claim with respect to Figaro. The record would suggest that at least Scales was aware of the alleged insubordination and misconduct, and Defendants contend that the reason that Bush was not disciplined was that the complainant's counsel (who also is Plaintiff's counsel in this case) intervened and wrote a letter proposing that the matter be solved by transferring Bush to another school, which was done. Plaintiff responds that his counsel has no intention of becoming a witness in this case and that the fact that her requests for remedial action on behalf of both this African-American complainant and Plaintiff only yielded results for the African-American claimant is only further evidence of racial discrimination. However, this response ignores the fact that if Plaintiff attempts to present Bush as a comparable, claiming that the difference in discipline was the result of racial bias, Defendants have a right to show that the reason for the difference was the result of counsel's request. This would necessarily put Plaintiff's counsel in the position of being a potential witness in this case. If Plaintiff's counsel foregoes presenting Bush as a comparable in an effort to

---

[1] Plaintiff does not respond to Defendants' assertion that there has been no evidence supporting an allegation that Bush misused sick leave or that any Defendant was aware of such abuse. Accordingly, Plaintiff has abandoned any such allegation.

avoid this conflict, then she may not be acting in the best interests of her current client. This matter will need to be discussed further in conjunction with the final pretrial conference on December 3, 2010.

Plaintiff lists Cordell Johnson ("Johnson") as a comparable based on his alleged repeated lateness[2], insubordination, and overly aggressive behavior toward students. Defendants argue that Johnson's insubordination was directed toward an entirely different administrator and was resolved at the building level without going to Scales as the head of the security department. Plaintiff responds that Scales was aware of the problem and simply transferred Johnson to another building rather than take disciplinary action against him, presenting an issue of material fact. Defendants further contend that Johnson received a three-day suspension without pay for an incident of being overly aggressive with students and that other incidents of excessive force were not the subject of formal complaints. This situation also presents an issue of fact requiring assessment of credibility that must be determined at trial. Accordingly, the Court cannot find at this point that Plaintiff cannot offer Johnson as an example of an alleged comparable.

Demario Boone ("Boone") is an African-American officer who was repeatedly late but was not disciplined by Scales. Assuming that Plaintiff will introduce testimony at trial establishing that Boone was in fact repeatedly late and that these episodes of tardiness were reported to Scales, he will be able to offer Boone as an alleged

---

[2] Plaintiff does not respond to Defendants' assertion that there has been no evidence supporting an allegation that Johnson was repeatedly tardy or that any Defendant was aware of such abuse. Accordingly, Plaintiff has abandoned any such allegation.

comparable, and Defendants will be free to rebut his assertion with evidence indicating a non-discriminatory reason for the difference in discipline. It will then be up to the jury to determine how to weigh this evidence.

John Timmes ("Timmes") is an African-American who was previously employed as an officer in the security department. Plaintiff alleges that Timmes left an arrestee unattended allowing him to escape, misused sick leave, was overly aggressive to parents and students, and left work early/was tardy. Defendants attempt to distinguish Timmes' conduct by arguing that Timmes searched for the escaped arrestee while Plaintiff did nothing to mitigate his error. Defendants also attempt to distinguish Plaintiff's assertion that Timmes misused sick leave based on the fact that Timmes was not specifically on medical leave at the time he called in sick to work for the school but nevertheless reported to work for the Park District. However, it is for the jury to determine whether such factual differences constitute a reasonable justification for differences in disciplinary action.

Defendants object to the use of James Donald ("Donald") as a comparable. Plaintiff responds that he will not offer Donald as a comparable, but will only testify that his knowledge of the incident involving Donald and his gun explains why he refused to go into a situation where he was vastly outnumbered.

Frank Serrano, a Hispanic officer, is alleged to be comparable because he was late on repeated occasions, misused sick leave, was insubordinate, and was overly aggressive with students. Defendants' claim regarding tardiness or leaving work early suffers from the same flaw as the claim with respect to Figaro and Bush. Defendants further contend that Serrano was permitted to use personal days, not sick days, for a

vacation after having been told that he could do so by the HR director and that he was docked two-days pay because he did not have sufficient personal days to cover his absence. This is sufficiently different in substance and fact to render Serrano not comparable to Plaintiff in this respect, and Plaintiff will not be permitted to argue that Serrano was comparable in terms of misuse of sick leave. Defendants further maintain that instances of alleged insubordination were resolved informally through counseling, as opposed to Plaintiff's irremediable incidents of insubordination and that an investigation into allegations of excessive force was found to be unsubstantiated. Again, it is for the jury to determine whether such factual differences constitute a reasonable justification for differences in disciplinary action.

Defendants also argue that Serrano cannot be a comparable employee because he is not African-American, but rather Hispanic, and Hispanics are regularly classified as white for purposes of comparison. Plaintiff responds that he will not offer Serrano as a comparable employee for his racial discrimination claim, but rather as evidence of pretext in support of his retaliation claim as an officer who did not complain of discrimination and was treated more favorably.

B.      White Employees Outside Campus Security Department

Defendants assert that the treatment of white employees outside of the security department is irrelevant, as such personnel have job duties that are quite different from security personnel and are not subject to the detailed departmental policies governing security personnel. Moreover, campus security officers work under a CBA that is separate from all other employees of the school district. While the Court agrees that

such evidence would be irrelevant if Plaintiff attempted to offer evidence of white employees outside of the security department as similarly situated comparables, that does not appear to be Plaintiff's purpose or intent with respect to this evidence.

Rather, Plaintiff references general evidence of widespread refusal to acknowledge complaints by white employees that they were the victims of racial discrimination, repeated refusal to discipline non-white employees, and a policy of hostility to complaints of racial discrimination by white employees.  *See* Hague v. Thompson, 436 F.3d 816 (7th Cir. 2006) (discussing modified standard of proof for reverse discrimination cases and that "background circumstances" can create an inference of discriminatory intent); Mills v. Health Care Serv. Corp., 171 F.3d 450, 454-55 (7th Cir. 1999); Rudin, 420 F.3d at 721 (noting that statements about pressure to hire minorities and affirmative action plan relevant circumstantial evidence of discriminatory intent under direct method).  For the limited purposes offered by Plaintiff, the Court cannot summarily conclude that such evidence would be inappropriate under any circumstances without knowing the context in which such material will be offered. However, the Court has a great enough concern about the propriety of this evidence to require that Plaintiff notify the Court prior to offering any of this type of evidence or argument so that any specific objections can be resolved outside the presence of the jury.  If any of this testimony is ultimately allowed, the Court will consider an appropriate cautionary instruction if requested to do so.

  C. Opinions of Counselor

Defendants argue that the pre-treatment diagnostic or causation opinions of licensed clinical professional counselor Deborah Obert-Kapitko ("Kapitko") should be

barred, as she was not treating Plaintiff at the time of his discharge in August 2006, did not begin treating him until January 5, 2009, and has not reviewed the records of any provider who was treating him in the past. Specifically, Defendants object to any testimony by Kapitko that an incident in October 2008 was not the cause of Plaintiff's post-traumatic stress disorder ("PTSD") or that he had suffered from PTSD for three years prior to her first visit with him. Giving these opinions would necessarily require Kapitko to rely on something more than her own observations in treatment from 2009 forward, and Defendants maintain that this something more pushes these particular aspects of her testimony into the realm of undisclosed expert testimony. Furthermore, Defendants contend that as a counselor, Kapitko is simply not qualified to give opinions as to medical causation.

Plaintiff responds at length regarding the disclosures he made for his treating professionals and argues why an expert report wasn't required for the testimony of his treating providers because they only testify to observations, diagnoses, and findings of causation made during treatment. Finally, Plaintiff indicates that he will not attempt to introduce Kapitko's opinion that he suffered from PTSD for three years prior to her first visit with him; this is a wise decision, as such testimony would plainly be inadmissible. However, Plaintiff does intend to offer testimony that he suffered from PTSD during his treatment with Kapitko and her opinion that the PTSD was caused by his employment with the school district.

Although there is a surprising dearth of authority on this question, the Court has found three cases where PTSD was held to be a medical diagnosis that a licensed counselor was not qualified to make. In <u>United States v. Crosby</u>, 713 F.2d 1066, 1076-

77 (5th Cir. 1983), the Fifth Circuit held that the trial court had properly refused to classify a counselor as an expert "on the ground that only physicians could qualify as diagnostic experts concerning this medical condition."  In <u>Hawkins v. St. Clair County</u>, 2009 WL 839272, at *4-5 (S.D.Ill. March 30, 2009), the plaintiff conceded that a licenced clinical professional counselor was not competent to render a diagnosis in Illinois. Judge Herndon went on to find that while the counselor was not qualified to diagnose PTSD in his patient, his training would allow him to identify signs and symptoms of mental illness based on his observations during treatment if an appropriate foundation could be laid.  <u>Id.</u>  Finally, in <u>Carlson v. Banks</u>, 2007 WL 5711692, at *11 (N.D.Ill. Feb. 2, 2007), the licenced clinical professional counselor admitted that PTSD was a medical diagnosis, and the plaintiff stipulated that she did not have an adequate foundation to diagnose PTSD or give opinions regarding permanency and/or future treatment.

While these cases are persuasive precedent suggesting the applicability of a bright line rule in this situation, the Court has found no such rule in Seventh Circuit case law.   Given this, as well as Plaintiff's suggestion that Kapitko's particular experience and qualifications warrant a different result, this issue must proceed to an evidentiary hearing in conjunction with the Final Pretrial Conference in order to evaluate whether Kapitko is qualified to present this testimony and if the nature of the testimony crosses the line from treating provider testimony into that kind of testimony that must be the subject of expert opinion and comply with the holding in <u>Meyers v. National Railroad Passenger Corp.</u>, _____ F.3d _____, 2010 WL 3385182 (7th Cir. 2010).

D.      Officer David Mize's Notes

Defendants next object to any use of notes by Officer David Mize ("Mize") that were not produced to them until May, 19, 2010, more than a month after the close of discovery.  The notes reportedly involve 95 pages of Mize's notes of his observations on when numerous officers arrived for work, when they left, when they were out on appointments, who was off from work, who was assigned what duties, etc.  Defendants maintain that proper investigation of these untimely produced notes will require a great deal of time and potentially additional discovery.

Plaintiff responds that he does not intend to offer Mize's notes into evidence unless the door is opened by Defendants.  Accordingly, this portion of the motion would appear to be moot.

E.      Arbitrator's Findings and Order

The Court previously addressed the admissibility of the arbitrator's findings and order in the context of Plaintiff's Combined Motions in Limine in Section I.A. of this Order, and the same result necessarily follows.  Accordingly, the findings and order of the arbitrator are generally admissible, subject to any request for partial redaction of irrelevant information, and the Court will consider an appropriate cautionary instruction if requested.  However, the Court finds that collateral estoppel does not apply under the circumstances of this case, as the issues resolved in the arbitration, while relevant, are not identical to those at issue in this case.  In other words, the finding that there was just cause for discipline does not preclude consideration of whether the employer acted unlawfully in determining the level of discipline to be imposed.

**IV.	Defendants' Supplemental Motion in Limine [#70]**

A.	Qualified Immunity

Defendants argue that their conduct was protected by the doctrine of qualified immunity as they did not violate any clearly established statutory or constitutional rights of which a reasonable person would have known.  Raising this issue in a motion in limine after failing to pursue a motion for summary judgment would be completely inappropriate.  However, Defendants have clarified that they raise this issue only to provide notice that they anticipate asking the Court to direct a verdict on this basis following the close of Plaintiff's case at trial.  Accordingly, the claim of qualified immunity does not require a ruling by the Court at this time.

B.	Pre-Termination Procedural Due Process

As Plaintiff's claim is that the pre-termination hearing given to him was a "sham" and does not claim that the arbitration process provided by the CBA violated due process or was unfair, Defendants argue that he cannot now argue that the arbitrator's decision was incorrect or that the result would have been different without the alleged sham hearing by Defendant Broderick.  They cite <u>Dargis v. Sheahan</u>, 526 F.3d 981, 989 (7th Cir. 2008), for the proposition that "where a plaintiff would have suffered the same fate had the required hearing been held, he is not entitled to recover damages caused by the suspension."

Plaintiff acknowledges caselaw holding that where the employer can demonstrate that the employee would have been disciplined even if a proper hearing had been given, the employee cannot receive damages stemming from the discipline itself, such as lost wages, etc.  The arbitrator's finding of just cause for the discipline accomplishes this,

and Plaintiff will not be at liberty to relitigate the finding of just cause. However, Plaintiff is not entirely foreclosed from pursuing his due process claim and may still be entitled to recover emotional distress damages if he can prove that he suffered distress specifically attributable to the deficiencies in procedure or nominal damages for the technical violation. Alston v. King, 231 F.3d 383, 386 (7th Cir. 2000). Accordingly, Defendants' request is granted in part and denied in part.

      C.     Affirmative Action Plan and Minority Recruitment Policy

Defendants seek to preclude Plaintiff from offering evidence of its Affirmative Action Plan adopted in 1989 and its Minority Recruitment Policy adopted in 1990, as they have not been invoked or relied on by any Defendant in his or her defense. They correctly note that any attempt to use the mere existence of these plans as evidence of discriminatory intent would be improper under Christensen v. Equitable Life Assurance Society, 767 F.2d 340, 343 (7th Cir. 1985). They further argue that the documents are irrelevant because they address hiring, promotion, and recruitment rather than discipline or termination and would be unfairly prejudicial by misleading the jury.

While Defendants are correct that the mere existence of an affirmative action plan or minority recruitment policy cannot establish discriminatory intent in and of themselves, the holding in Christensen is based on the fact that the existence of an affirmative action program was the only evidence of discriminatory intent that the plaintiff was able to offer. Here, Plaintiff intends to offer the existence of the affirmative action plan and recruitment policy, in conjunction with comments by Defendant Scales indicating that he was disciplining Plaintiff because he was white but could not discipline African-Americans and other evidence in an attempt to provide a link between the

policies and its treatment of Plaintiff.  In so doing, Plaintiff will attempt to introduce a circumstantial mosaic of alleged discriminatory intent revealing a district-wide policy of reverse racial discrimination.  Accordingly, <u>Christensen</u> is not controlling in this situation, and the case is more closely analogous to <u>Rudin v. Lincoln Land Community College</u>, 420 F.3d 712, 722 (7th Cir. 2005), and <u>Whalen v. Rubin</u>, 91 F.3d 1041, 1045 (7th Cir. 1996).  Thus, if Plaintiff is able to lay a proper foundation, these policies may be relevant and probative; Defendants' request to bar any reference to these documents must therefore be denied at this time.

D.     Charges of Discrimination by Lobdell and Jenkins

Defendants move to preclude Plaintiff from introducing the Charges of Discrimination filed by Felix Lobdell and Taunya Jenkins in 2004 and the District's responses thereto.  As both of these individuals are African-American principals in District 150 who were not selected for the position of Manual High School principal, Defendants argue that such evidence would be irrelevant and unfairly prejudicial.

Plaintiff responds that evidence that a number of racial discrimination claims by African-American employees had been filed or were pending at the time the decision was made to terminate him is relevant to showing the climate in which the decision took place and the motive of the decision-makers.  The Court agrees, and although Defendants summarily assert unfair prejudice, they have not provided the Court with any explanation beyond this bald assertion.  Accordingly, this portion of the motion in limine must be denied.[3]

_____

[3] The Court notes parenthetically that it is somewhat perplexing that Plaintiff wishes to introduce this particular evidence, as the resultant promotion of a white

E.     Reputation Damages

Defendants assert that Plaintiff should be barred from pursuing any claim for damage to his reputation in this matter.  Plaintiff has confirmed that no such claim will be made, and this aspect of the motion appears to be moot.

F.     Punitive Damages Against the School District

Defendants contend that punitive damages are not available against the school district and or the individual defendants in their official capacities.  Plaintiff agrees and affirmatively states that he will only seek punitive damages against the individual defendants in their individual capacities.  As a result, this aspect of the motion also appears to be moot.

G.     Interim Earnings

Defendants take the position that they should be allowed to introduce evidence and argument concerning Plaintiff's interim earnings with the Eureka Police Department as a setoff against any award of back pay or lost wages and argue that his failure to mitigate his damages by quitting his position with that department.  They cite <u>Chesser v. State of Illinois</u>, 895 F.2d 330, 338 (7th Cir. 1990), for the proposition that when an employee earns money from jobs that could not have been worked had no discrimination occurred, such amounts can be used as a set off against any back pay or lost wage award.

---

employee over two African-American employees could just as likely be interpreted as undermining his claim of reverse discrimination than supporting it.

As set forth in Section II.F. above, this matter requires a fact intensive inquiry that is not appropriately considered in a motion in limine, as a determination of whether and what percentage of any time worked for the Eureka Police Department constitutes "interim earnings" or whether his termination of his employment with that department constitutes a failure to mitigate will require the taking of evidence and the assessment of credibility. In the event that the trial proceeds to the damages phase, Defendants will be allowed to present evidence in support of its mitigation defense or request for setoff subject to specific objections by Plaintiff at that time.

G. Causation Opinions by LCPC Raabe

As with LCPC Kapitko previously in this Order, Defendants seek to preclude Plaintiff from offering evidence or opinion from Raabe regarding the causation of his condition. Again, they argue that while Raabe is a treating provider, certain of his opinions constitute expert testimony that was not properly disclosed as such, that his methodology is flawed under Daubert.

Plaintiff responds that he does not intend to solicit causation testimony from Raabe unless Defendants open the door, and this issue would appear to be moot. To the extent that this evidence comes into play at trial, the Court will need to evaluate whether Raabe is qualified to present this testimony and if the nature of the testimony crosses the line from treating provider testimony into that kind of testimony that must be the subject of expert opinion and comply with the holding in Meyers prior to any attempt to introduce such evidence to the jury.

**CONCLUSION**

For the reasons set forth above, Plaintiff's Combined Motions in Limine [#66] are GRANTED IN PART and DENIED IN PART.  Plaintiff's Supplemental Combined Motions in Limine [#71] are GRANTED IN PART, DENIED IN PART, and MOOT IN PART.  Defendants' Motion in Limine [#59] is GRANTED IN PART, DENIED IN PART, and MOOT IN PART.  Defendants' Supplemental Motion in Limine [#70] is GRANTED IN PART, DENIED IN PART, and MOOT IN PART.  This matter remains set for final pretrial conference and evidentiary hearing on identified issues on Friday, December 3, 2010.

ENTERED this 29th day of November, 2010.


s/ Michael M. Mihm
Michael M. Mihm
 United States District Judge